## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DISTRICT OF COLUMBIA,**
441 4th Street, N.W.
Washington, D.C. 20001

**Case No.**

**Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF LABOR,**
Frances Perkins Building
200 Constitution Avenue, N.W.
Washington, D.C. 20210

Serve:
Attorney General of the United States
c/o Assistant Attorney General for Administration
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

United States Attorney for the District of Columbia
c/o Civil Process Clerk
555 4th Street, N.W.
Washington, D.C. 20530

**SETH D. HARRIS, ACTING SECRETARY,**
**UNITED STATES DEPARTMENT OF LABOR,**
**in his official capacity,**
Frances Perkins Building
200 Constitution Avenue, N.W.
Washington, D.C. 20210

and

**MARY BETH MAXWELL, ACTING DEPUTY**
**ADMINISTRATOR,  WAGE AND HOUR**
**DIVISION, in her official capacity,**
Frances Perkins Building
200 Constitution Avenue, N.W.
Washington, D.C. 20210

**Defendants.**

## COMPLAINT

1.      This is an action for judicial review of the decision of the United States Secretary of Labor entered by the Secretary's designee, the Administrative Review Board ("ARB"), in the matter of *Application of the Davis-Bacon Act To Construction of the CityCenterDC Project in the District of Columbia*, ARB Case Nos. 11-074, 11-078, 11-082. The ARB's decision, issued April 30, 2013 (attached hereto), affirmed a ruling of the Acting Administrator of the Wage and Hour Division ("WHD") of the Department of Labor and constitutes the final agency action.

2.      The final agency action concluded that the Davis-Bacon Act, 40 U.S.C. § 3141, *et seq.*, which applies by its terms to the construction of "public buildings and public works," applies to the construction of buildings constituting the CityCenterDC project in the District of Columbia, *even though the project is privately financed and privately constructed and at all relevant stages privately owned, privately occupied, and privately operated.* The Department of Labor's decision violates the Davis-Bacon Act, the Administrative Procedure Act, and nearly a century of judicial and administrative precedent; exceeds its own lawful jurisdiction, powers, and authority; and is otherwise arbitrary, capricious, an abuse of discretion, and not in accordance with law.

3.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question). The District is entitled to judicial review of the final agency action under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*

4.      Venue properly lies in the District of Columbia pursuant to 28 U.S.C. § 1391(e).

5.      The plaintiff District of Columbia is a municipal corporation and faces grave financial consequences if the Department of Labor's decision is permitted to stand.

2

6.      The defendants, the Department of Labor, the Secretary of Labor, and the
Administrator of the Wage and Hour Division, are responsible for issuing the agency action
under review.

## Davis-Bacon Act

7.      The Davis-Bacon Act provides that "[t]he advertised specifications for every
contract in excess of $2,000, to which the Federal Government or the District of Columbia is a
party, for construction, alteration, and/or repair . . . of public buildings and public works of the
Government or the District of Columbia . . . which requires or involves employment of
mechanics and/or laborers shall contain a provision stating the minimum wages to be paid
various classes of laborers and mechanics." 40 U.S.C. § 3142(a). Every contract based upon
these specifications must contain a stipulation that the contractor shall pay wages not less than
those stated in the specifications. 40 U.S.C. § 3142(a).

8.      The Act further provides that "[t]he minimum wages shall be based on the wages
the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and
mechanics employed on projects of a character similar to the contract work . . . in the District of
Columbia if the work is to be performed there." 40 U.S.C. § 3142(b).

9.      Reorganization Plan No. 14 of 1950 authorizes the Secretary of Labor to
coordinate the administration of the Davis-Bacon Act by federal agencies by prescribing
standards, regulations, and procedures to govern the enforcement activities of the various federal
agencies. Under the Plan, the actual performance of enforcement activities, normally including
the investigation of complaints of violations, remains the duty of the federal agencies awarding
the contracts.

3

10. The federal agency awarding the contract has the initial responsibility for determining whether a particular contract is subject to the Davis-Bacon Act. Pursuant to the Reorganization Plan and Department of Labor regulations, the federal agencies' coverage determinations are subject to administrative review by the Department of Labor. *See* 29 C.F.R. §§ 5.1, 5.13.

11. The Department of Labor does not have the exclusive authority within the executive branch of the federal government to make legal determinations about whether a particular contract entered into by a federal agency is covered by the Davis-Bacon Act.

**Factual Background**

12. Pursuant to D.C. Code § 10-801 (setting forth general requirements for disposal of District property) and D.C. Code § 10-1202.15a (authorizing disposition of the former convention center site), the Mayor and the Council of the District of Columbia made findings that the property at issue, which was owned by the District of Columbia, was "no longer required for public purposes." *See* D.C. Council Resolution 16-165, effective June 7, 2005, 52 D.C. Reg. 5902.

13. Pursuant to these findings, the District agreed to lease the ground underlying the former site of the Convention Center to CCDC LLC, a private joint venture of private developers, pursuant to the Amended and Restated Development Agreement and Land Disposition Agreement dated December 14, 2007 ("LDA"). The LDA provides that the site or portions of the site will be transferred to the Developer or assignees of the Developer ("Project Developers") (1) by ground leases for 99 years, (2) in fee by special warranty deed for those portions of the site on which for-sale residences are to be constructed, and (3) by license agreement for twenty years for the northwest corner of the Site for a park.

4

14. As currently designed, the CityCenterDC project ("Project") is a mixed-use development with 2.5 million square feet of office, residential, hotel, and retail space as well as a public plaza and park. It is undisputed that none of the buildings being constructed is for use or occupancy by the District of Columbia Government. Private parties will have exclusive use over the vast majority of the Project, which by the terms of the LDA includes: approximately 520,000 square feet of office space; 458 residential rental units; approximately 295,000 square feet of retail space; 216 for-sale residential units; 1,555 parking spaces; and a high-end hotel, with 350 to 400 hotel rooms.

15. The site will also include a publicly accessible park and plaza. Private entities will own and operate these amenities. These publicly accessible features are approximately 49,000 square feet in total—less than two percent of the Project's total square footage.

16. It is undisputed that no public funds will be used to fund or pay for the construction of the CityCenterDC project. The Project Developers (and not the District) are responsible for funding, constructing, operating, and maintaining all of the improvements.

17. The improvements that are being built on the site are being constructed pursuant to contracts entered into between the Project Developers and the construction contractors they have selected. The District is not a party to any such construction contracts, and has no right to select any of the construction contractors. The Project Developers are also responsible for the design and construction of all buildings and improvements in accordance with the terms of the controlling agreements.

18. The Project Developers are overseeing and coordinating the construction of the Project, will control the buildings that are being constructed on the site, will bear the economic

risk of loss as to the development and ongoing operations, and will reap the primary economic benefits of the Project.

19.    Although the District will receive rent under the ground leases, the benefits the District will otherwise derive from the Project are the same benefits that the District would derive from *any* successful private development. Such typical benefits include generation of tax revenues, creation of new jobs, construction of public amenities, and creation of opportunities to construct affordable housing units. There is nothing remarkable or unique about these public benefits accompanying development of the CityCenterDC project.

20.    It is also undisputed that the Project Developers will own all of the buildings on the site for the 99-year term of the lease and that the for-sale residential units shall be owned by private parties in perpetuity. Moreover, the ground lease agreements specifically provide, "*In no event and under no circumstances whatsoever shall the rights* herein granted or to be granted in the future pursuant to this Lease, to or for the benefit of Landlord or Tenant *be deemed to be for the benefit of the public.*" (E.g., December 14, 2007 Ground Lease Agreement, § 21.23 (emphasis added).)

21.    Consequently, CityCenterDC project will be privately funded, privately built, privately owned, privately occupied, privately operated, and privately maintained.

**The Department of Labor's Initial Decision That Davis-Bacon Act Does Not Apply**

22.    In April 2009, the Mid-Atlantic Regional Council of Carpenters (the "Carpenters") petitioned the Department of Labor's Wage and Hour Division ("WHD") for a ruling that the Project qualifies as a "public work" under the Davis-Bacon Act, and is thus subject to the Act's prevailing-wage requirements. The WHD Administrator delegated the task

6

of ruling on the Carpenters' request to Timothy Helm, Chief of the Branch of Government Contracts, Division of Enforcement Policy, WHD.

23.     The District of Columbia had made the determination, as reflected in its filings with the Department of Labor, that the Project did not qualify as a public work under the Davis-Bacon Act. Chief Helm of the WHD ruled in favor of the District's determination.

24.     Chief Helm determined in an August 30, 2010 written ruling that the Davis-Bacon Act did not apply to the CityCenterDC project. He relied on a five-factor test announced in a 1994 Opinion of the Office of Legal Counsel, U.S. Department of Justice, for construction of buildings to be leased to the government, thereby agreeing with the Carpenters that this five-factor test was applicable. Chief Helm's written determination included the following factual findings: "[I]t appears that the City Center buildings and other works will *primarily be used for private purposes* during the period of the ground leases—such as retail, residential, hotel, office, and parking uses—serving the presumably private individuals and businesses that come to frequent and occupy them. *There is no indication that the District will occupy the buildings or works, or that the improvements will be used to provide government services to the public . . .*" (WHD Aug. 30, 2010 Ruling at 3-4 (emphasis added).)

## Ruling of the Acting Wage and Hour Administrator

25.     The Carpenters filed a Request for Reconsideration of the WHD ruling on October 29, 2010, in which the Carpenters reversed course and argued that the five-factor test had little bearing on this matter. The District and the Project Developers each filed an Opposition to the Carpenters' Request. Aside from disputing the merits and untimeliness of the Carpenters' claim, to the extent that any reversal of Chief Helm's ruling was contemplated at this

late date, the Project Developers requested that the Acting Wage and Hour Administrator exercise her discretion to impose Davis-Bacon coverage only on a prospective basis.

26. On June 17, 2011, the Acting Wage and Hour Administrator issued a ruling reversing the agency's earlier ruling of August 30, 2010, and holding that the Davis-Bacon Act applies to the Project. Although the Acting Administrator concluded that the District is *not* funding the Project—which is plainly correct—she nevertheless held that Davis-Bacon coverage lies because the Project "will be carried on by the District's direct authority," and "the project *sufficiently* 'serve[s] the interest of the general public' to constitute a 'public work.'" (WHD June 17, 2011 Ruling at 6-7 (emphasis added).)

27. In reaching this conclusion, the Acting Administrator notably did not find any error with the WHD's prior factual finding that "the City Center buildings and other works will primarily be used for private purposes."

28. In its ruling, the Acting Administrator also arbitrarily and capriciously disregarded the WHD's own use of the five-factor test announced in the 1994 Opinion of the Office of Legal Counsel of the Department of Justice.

29. The Acting Administrator's ruling ordered compliance with the Davis-Bacon Act starting with the first pay-period week immediately following June 17, 2011. It also ordered the District and the Project Developers to amend all agreements to reflect coverage under the Act. (WHD June 17, 2011 Ruling at 8.)

30. The Acting Administrator's decision erroneously stated in a footnote, without any basis or explanation, that the District was responsible for the cost of any increase in wages and fringe benefits resulting from the application of the Davis-Bacon Act to the Project. Such statement is not only legally erroneous, but also in excess of any jurisdiction or lawful authority

8

or power of the Department of Labor. Upon information and belief, such cost, if imposed on the District, would be approximately $20 million.

## Decision of the Administrative Review Board

31. The District, the Project Developers, and the Carpenters all filed petitions for review from the decision of the Acting Administrator to the Administrative Review Board ("ARB"), pursuant to 29 C.F.R. Part 7. The ARB issued its decision affirming the Acting Administrator on April 30, 2013 ("ARB Decision").

32. The ARB reaffirmed the Acting Administrator's holding that the land disposition and lease agreements between the District and the Project Developers constituted "contracts for construction" within the meaning of the Davis-Bacon Act. In this regard, the ARB relied on inapposite cases involving government funding of private construction pursuant to a lease for the express purpose of government occupancy of such buildings. (ARB Decision at 10-12.) The ARB failed to address or distinguish contrary judicial authority.

33. The ARB also affirmed the Acting Administrator's holding that the CityCenterDC project constitutes a "public work" under the Davis-Bacon Act, notwithstanding the apparent conflict between this holding and both the plain language and legislative history of the Act, as well as court decisions that have previously required government expenditures of funds in order for a project to qualify as a "public work."

34. In this regard, the ARB purported to rely on the Department of Labor's regulatory definition of "public work" set forth at 29 C.F.R. § 5.2(k) (defining "public building or public work" to include "any building or work, the construction, prosecution, completion, or repair of which ... is carried on directly by authority of or with funds of a Federal agency to serve the interest of the general public"). According to the ARB, the CityCenterDC project met the

9

regulation's two "prongs," each of which must be satisfied to establish that a construction project is a "public work" under the Davis-Bacon Act: (1) the Project's construction is being carried on "directly by authority of the District" (ARB Decision at 12-13); and (2) the Project "serves the interest of the general public." (ARB Decision at 13-14).

35.    The ARB ignored or rejected all arguments by the Project Developers and the District that the Project met neither prong of the regulatory definition of public work. It ignored, for example, the fact that the District was expending no funds on the Project, that the Acting Administrator had erroneously conflated "directly by the authority of" with "considerable" authority, that the Project will be constructed under contracts to which the District is not a party, and that the provisions of the LDA are not substantively different from government approvals necessary for other large-scale, mixed-use commercial development projects.

36.    The ARB also erroneously refused to apply the standard found in judicial and administrative precedent that a project must primarily benefit the public to be a public work. The ARB incorrectly substituted and applied a standard that considers whether a private commercial development has significant public benefits. (ARB Decision at 13- 14.) It further ignored the District's arguments that the public benefits from the Project are typical of any commercial development project and incidental to any such project's primary purpose, which is private economic gain.

37.    The ARB also ignored or rejected all arguments by the District and the Project Developers that the Acting Administrator's overbroad interpretation of the regulation itself violates the Act's statutory language, legislative intent, and judicial and administrative precedents.

38.    The ARB thereupon erroneously affirmed the ruling of the Acting Administrator
and held that the Davis-Bacon Act applies to the CityCenterDC project. (ARB Decision at 15.)

39.    The ARB also affirmed the Acting Administrator's further holding that the Davis-
Bacon Act should be applied only to wages paid after issuance of her June 17, 2011
determination. (ARB Decision at 15-16).

40.    The ARB refused to address the erroneous statement in the footnote in the Acting
Administrator's decision stating that the District was responsible for any increase in wages and
fringe benefits resulting from application of the Davis-Bacon Act to the Project. While not
affirming the Acting Administrator's statement on that issue, the ARB did not expressly reverse
either, but simply stated that the issue was "not ripe" and thus not properly before it. (ARB
Decision at 17 n.12.)

## Claim for Relief

41.    The Davis-Bacon Act applies only to "contracts for construction" to which the
District (or the federal government) is a party. As shown by the Act's plain language, legislative
history, and relevant judicial precedent, the District (or the federal government) is not a party to
any contracts for construction for the CityCenterDC project as required for coverage under the
Davis-Bacon Act.

42.    The Davis-Bacon Act also applies only to contracts for construction of "public
buildings" or "public works."

43.    There is no finding or claim that the buildings to be constructed by the Project
Developers as part of the CityCenterDC project are "public buildings" for purposes of the Davis-
Bacon Act.

11

44. As shown by the Act's plain language, legislative history, and relevant judicial precedent, the CityCenterDC project is not a "public work" of the District (or of the federal government) as required for coverage under the Davis-Bacon Act.

45. The plain meaning of a "public work," as distinct from a public building, is a structure such as a road, bridge, or dam that is for public use and paid for by public funds. The CityCenterDC project, a mixed-use commercial development, is not a structure like a road, bridge, or dam. It is also not for public use, and it is not paid for by public funds.

46. As the text and legislative history of the Davis-Bacon Act make clear, the Act is an exercise of Congress's spending power and governs only the expenditure of funds from the federal treasury. The Project here, however, involves no spending by the federal government or the District of Columbia and no appropriation or expenditure of public funds.

47. The Project is not carried on directly by the authority of the District.

48. The public benefits of the Project are not different than the public benefits of any commercial development and are merely incidental to the Project's primary purpose.

49. Because the necessary coverage requirements of the Davis-Bacon Act are not satisfied, the Department of Labor's purported application of the Act to the CityCenterDC project violates the Act itself.

50. Moreover, under the Administrative Procedure Act, a reviewing court must set aside an agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

51. The Department of Labor's decision purporting to apply the Davis-Bacon Act to the CityCenterDC Project violates the Administrative Procedure Act because it is in excess of the Department's jurisdiction, authority, and power.

12

52. Congress has not extended the jurisdiction or authority of the Department of Labor to make Davis-Bacon Act coverage determinations regarding contracts entered into by the District of Columbia. The District of Columbia is also not a federal agency for purposes of the Reorganization Plan No. 14 of 1950.

53. Under the Administrative Procedure Act, a reviewing court must also set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

54. The Department of Labor's decision purporting to apply the Davis-Bacon Act to the CityCenterDC project violates the Administrative Procedure Act because it is arbitrary, capricious, an abuse of discretion, and is otherwise not in accordance with the law.

55. The Department of Labor's decision conflicts with the plain language and legislative history of the Davis-Bacon Act, as well as judicial and administrative precedent applying the Act for nearly a century. The decision further mistakenly and explicitly relied on prior administrative decisions as support, when in fact those prior decisions provided no such support and actually support the contrary conclusion.

56. The Department of Labor failed to recognize or address its decision's extraordinary and unprecedented implications, including that every instance of private construction requiring some degree of federal or District government approval is now potentially a "public work" if such construction might create some public benefit. Not only is this an unprecedented and impermissible expansion of the Davis-Bacon Act, but the decision's failure to even recognize or address its own extraordinary implications also renders it arbitrary and capricious and an abuse of discretion.

57.    Upon information and belief, through the Department of Labor's decision, the federal government has applied to the District an interpretation of the Davis-Bacon Act that the federal government does not follow in its own practice. For example, the federal government regularly leases federal lands to private individuals or entities to construct buildings or other structures for private use. While expecting and ensuring that some public benefit will be achieved by these leases, the federal government does not interpret the Davis-Bacon Act to apply in such situations.

58.    The ARB further acted contrary to law when it declined to expressly reverse the statement of the Acting Administrator that the District would be responsible for the costs of increased wages and fringe benefits if the Davis-Bacon Act applied to the Project. In making such a statement, the Acting Administrator acted without any jurisdiction or lawful authority or power. The ARB was required to correct such an *ultra vires* act in a ruling that it was reviewing, especially when such act has grave consequences for the public fisc.

59.    Absent judicial review and declaratory and injunctive relief, the District is threatened with irreparable harm. If the District were to be held responsible to pay the increased costs due to application of the Davis-Bacon Act pending judicial review of this erroneous decision of the Department of Labor, then the District would have to expend an extraordinary amount of the limited public funds, with little or no prospect of being able to recover those public funds once the decision under review is set aside.

60.    An award of declaratory and injunctive relief is in the public interest and threatens no harm to the Department of Labor.

## Prayer for Relief

Wherefore, the District petitions this Court to review and set aside the Department of Labor's final agency action, including the decisions of the Administrative Review Board and the Administrator of the Wage and Hour Division, and:

1.     Enter a preliminary and permanent injunction preventing and restraining the defendants from implementing the final decision in the matter of *Application Of The Davis-Bacon Act To Construction of the CityCenterDC Project In The District Of Columbia*, ARB Case Nos. 11-074, 11-078, 11-082, and/or any adverse findings of the Department of Labor purporting to apply the Davis-Bacon Act to the CityCenterDC project.

2.     Enter a judgment declaring that the decisions of the Department of Labor purporting to apply the Davis-Bacon Act to the CityCenterDC project are legally erroneous and unenforceable and that the Davis-Bacon Act does not apply to the Project.

3.     Grant the District any such other and further relief as this Court deems proper.

**DATED:  May 20, 2013**            Respectfully submitted,

                                    IRVIN B. NATHAN
                                    Attorney General for the District of Columbia

                                    /s/  George C. Valentine
                                    GEORGE C. VALENTINE
                                    Deputy Attorney General, Civil Litigation Division

                                    /s/  Kimberly Matthews Johnson
                                    KIMBERLY M. JOHNSON [435163]
                                    Chief, General Litigation Sec. I

/s/ Wayne C. Beyer
WAYNE C. BEYER [452245]
Assistant Attorney General
441 4th Street, N.W., 6th Floor-South
Washington, D.C. 20001
Tel: (202) 442-9891
Fax: (202) 730-0637
Wayne.Beyer@dc.gov

/s/ Carl J. Schifferle
CARL J. SCHIFFERLE [463491]
Assistant Attorney General
441 4th Street N.W.
Suite 600 South
Washington, D.C. 20001
(202) 724-6624
(202) 730-1472 (fax)
Carl.Schifferle@dc.gov

MORGAN, LEWIS & BOCKIUS LLP
Jonathan L. Snare (D.C. Bar # 992630)
Peter Buscemi (D.C. Bar No. 269092)
David M. Kerr (D.C. Bar #475707)
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-5446

Wayne C. Beyer

WAYNE C. BEYER [452245]
Assistant Attorney General
441 4th Street, N.W., 6th Floor-South
Washington, D.C. 20001
Tel: (202) 442-9891
Fax: (202) 730-0637
Wayne.Beyer@dc.gov

CARL J. SCHIFFERLE [463491]
Assistant Attorney General
441 4th Street N.W.
Suite 600 South
Washington, D.C. 20001
(202) 724-6624
(202) 730-1472 (fax)
Carl.Schifferle@dc.gov

MORGAN, LEWIS & BOCKIUS LLP
Jonathan L. Snare (D.C. Bar # 992630)
Peter Buscemi (D.C. Bar No. 269092)
David M. Kerr (D.C. Bar #475707)
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-5446